**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **RODERICK NASH, TERESA HILL,** ) | |
| **STEPHANIE TURNER,** ) | |
| ) | |
| **On Behalf of Themselves and** ) | **Civil Action No.: 4:24-cv-473** |
| **Others Similarly Situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **DAS ACQUISITION COMPANY, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ———————————————— ) | |

## FLSA COLLECTIVE AND RULE 23 CLASS ACTION COMPLAINT

Plaintiffs Roderick Nash, Teresa Hill, and Stephanie Turner, on behalf of themselves and

all others similarly situated, bring this action against Defendant DAS Acquisition Company, LLC

d/b/a USA Mortgage ("DAS" or "Defendant") for violation of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201, *et seq*. and applicable state statutes and common law.

## NATURE OF THE ACTION

1.      Plaintiff Roderick Nash ("Plaintiff Nash") alleges on behalf of himself and all other

similarly situated mortgage loan originator employees of Defendant, regardless of title, who elect

to opt into this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "MLO Collective"), that they

are (i) entitled to unpaid overtime premiums for all hours worked exceeding forty (40) in a

workweek, and (ii) entitled to liquidated damages, pursuant to the FLSA, 29 U.S.C. §§ 207, 216(b).

2.      Plaintiff Teresa Hill ("Plaintiff Hill") and Plaintiff Stephanie Turner ("Plaintiff

Turner") allege on behalf of themselves and all other similarly situated hourly, non-exempt

employees of Defendant, regardless of title, who elect to opt into this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Off-the-Clock Collective"), that they are (i) entitled to unpaid overtime premiums for all hours worked exceeding forty (40) in a workweek and (ii) entitled to liquidated damages, pursuant to the FLSA, 29 U.S.C. §§ 207, 216(b).

3.      Pursuant to Fed. R. Civ. P. Rule 23, Plaintiff Turner also alleges on behalf of herself and all hourly, non-exempt employees of Defendant, regardless of title, who work or worked for Defendant in the State of Missouri during the applicable statute of limitations period, that they are (i) entitled to unpaid overtime premiums for all hours worked exceeding forty (40) in a workweek and (ii) entitled to liquidated damages, pursuant to the MMWL, and (iii) entitled to unpaid straight-time wages pursuant to Missouri common law.

## JURISDICTION AND VENUE

4.      This Court has original federal question jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over Plaintiff Turner's Missouri state law claims under 28 U.S.C. § 1376 because the state claims are closely related to the FLSA claims and they form part of the same case or controversy.

6.      The United States District Court for the Eastern District of Missouri, Eastern Division has personal jurisdiction because DAS is a Missouri Limited Liability Company and conducts business within this District and Division.

7.      Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) and (c), as well as E.D. Mo. L.R. 2.07(B), inasmuch as DAS has offices, conducts business, and can be found in the Eastern District of Missouri, Eastern Division and a substantial part of the events giving rise to the claims occurred within this jurisdiction.

## PARTIES

8.     Plaintiff Roderick Nash was, at all relevant times, an individual residing in Weldon Spring, Missouri.

9.     At all relevant times, DAS employed Plaintiff Roderick Nash in St. Louis, Missouri, as a mortgage loan originator.

10.     Plaintiff Teresa Hill was, at all relevant times, an individual residing in New Braunfels, Texas.

11.     At all relevant times, DAS employed Plaintiff Teresa Hill in New Braunfels, Texas, as loan processor, lead processor, and loan officer assistant.

12.     Plaintiff Stephanie Turner was, at all relevant times, an individual residing in Bridgeton, Missouri

13.     At all relevant times, DAS employed Plaintiff Stephanie Turner in St. Louis, Missouri, as a loan processor.

14.     Defendant DAS Acquisition Company LLC d/b/a USA Mortgage is a Missouri Limited Liability Company, with its corporate headquarters located at 12140 Woodcrest Executive Drive, Suite 250, St. Louis, Missouri 63141.

15.     Defendant DAS provides real estate-related capital and loans and is licensed to conduct business and conducts business in Missouri and throughout the United States.

## FACTUAL ALLEGATIONS

16.     According to its website, Defendant DAS employs more than 1,000 employees at more than 100 branch locations throughout the United States.  *See* http://usamortgage.com/find-a-branch (last visited February 6, 2024).

17.     DAS employs more than 300 mortgage loan originators within the United States

("MLOs"). *See* http://usamortgage.com/find-a-branch (last visited February 6, 2024).

18.     In addition to its MLOs, DAS also employs hundreds of hourly, non-exempt employees within the United States in various positions, including but not limited to loan processors, loan officer assistants, post-closers and underwriting employees.

19.     DAS's organizational structure includes Local Branches, which report to Regional Branch Managers, who report to Corporate Headquarters and the Executives and Leadership Team responsible for directing and overseeing each aspect of DAS's operations, including human resources. *See* http://view.ceros.com/usa-mortgage/join-usam/p/1 (last visited February 6, 2024).

20.     DAS employs corporate Operations Managers to communicate, administer, and ensure adherence to its company-wide policies, procedures, and practices, including those pertaining to pay and time-keeping.

21.     DAS creates company-wide onboarding and training documents and materials to train the employees at each of its branch locations on DAS's company-wide policies, procedures, and operations. *See* http://view.ceros.com/usa-mortgage/join-usam/p/1 (last visited February 6, 2024).

22.     DAS's company-wide job descriptions reflect its employees in each position share similar qualification requirements, job responsibilities, and compensation structures.

23.     According to its website, Defendant DAS promises its prospective customers: "We're here for you, 24/7, and we will always close your loan on time. That's our promise." *See* http://usamortgage.com (last visited February 6, 2024).

24.     Moreover, DAS encourages prospective clients to choose USA Mortgage because "We're here 24/7/365.  USA-Mortgage.com was created to work with you ANY TIME. Whether it's during lunch or while binging your favorite shows late at night, we're here for you." *See*

http://usamortgage.com/why-usa-mortgage/ (last visited February 6, 2024).

25.     DAS even provides its customers 24/7 access to its loan origination employees by listing each MLO's cell phone number on the company website, as well as providing each MLO's e-mail address and giving these employees remote access to their work e-mail.

26.     DAS's hourly, non-exempt employees are provided remote access, via cell phones, e-mail, and/or VPN credentials, to enable after-hours communication with DAS's customers, loan originators, and management and other employees.

27.     DAS provides its customers and management employees with after-hours access to MLOs, processors, and other hourly, non-exempt employees in order to fulfill its mission of "the unrelenting pursuit of perfection" and its "strategy to deliver [its] clients a level of service unrivaled in the mortgage industry."

28.     Despite DAS's requirement that its employees are available to its customers 24/7, DAS does not allow its employees to report and receive pay for all their hours worked, including overtime.

<u>MORTGAGE LOAN ORIGINATORS</u>

29.     DAS employed Plaintiff Nash as mortgage loan originator from approximately February 4, 2016 until December 3, 2021.

30.     DAS paid Plaintiff Nash and other similarly situated MLOs a minimum wage draw, recoverable against commissions.

31.     Under this common compensation structure, DAS recaptured any minimum wage paid to Plaintiff Nash and other MLOs from their paid commissions.

32.     DAS, however, failed to pay Plaintiff Nash and MLOs for all their work hours including overtime.

33.     DAS did not pay Plaintiff Nash and MLOs for all their work hours including overtime compensation despite the fact that they routinely worked over eight hours per day and more than 40 hours per week.

34.     DAS suffered and permitted Plaintiff Nash and other MLOs to work more than forty hours per week without overtime compensation for all hours worked.

35.     DAS systematically applies this unlawful pay practice to all MLOs.

36.     For example, Plaintiff Nash and other MLOs regularly work(ed) at least five days a week. They usually begin work in the morning. And Plaintiff Nash and other MLOs regularly work into the evenings and on the weekends, causing their hours worked to exceed forty in a week on a regular basis.

37.     For example, Plaintiff Nash's schedule fluctuated from day-to-day.  However, his regular schedule had him working in either his branch or home office Mondays through Fridays, generally beginning around 9am and continuing well into the evening.  Additionally, Plaintiff Nash began checking and responding to work emails and calls each morning at approximately 8am, and he routinely continued taking and responding to calls, emails, and texts until 10 or 11pm. Plaintiff Nash also worked most weekends.  In the busier spring and summer months, Plaintiff Nash generally performed work between 9am-2pm most weekend days, and in the slower fall and winter months he generally performed 3-4 hours of work most weekend days. As such, Plaintiff Nash's regular schedule had him working an average of 60 hours per week.

38.     Although Plaintiff Nash is no longer employed at DAS, upon information and belief, DAS continues to carry out its same unlawful pay and time-keeping practices described in this Complaint, which deprived Plaintiff Nash and continues to deprive other similarly situated mortgage loan originators of overtime premiums for all hours worked over 40 in a workweek.

39.     DAS requires its mortgage loan originators to report no more than 8-hour workdays and 40-hour workweeks.

40.     DAS expects and directs its MLOs not to report overtime hours and, as a direct result, DAS does not accurately record and pay its MLOs overtime premiums for all overtime hours worked.

41.     Despite DAS's ability to accurately track, record, and pay its employees for all hours worked, including overtime, DAS subjected Plaintiff Nash, and similarly situated mortgage loan originators, to a company-wide, unlawful practice of failing to accurately record and pay for all hours worked, including overtime hours.

<u>HOURLY, NON-EXEMPT EMPLOYEES</u>

42.     DAS also restricts its other hourly, non-exempt employees' ability to report and receive pay for all hours worked, including overtime hours.

43.     DAS employed Plaintiff Hill as an hourly, non-exempt loan processor, lead processor, and/or loan officer assistant from approximately August 17, 2020 until October 19, 2023.

44.     DAS employed Plaintiff Turner from approximately January 2020 until October 2023, during which time she worked as an hourly, non-exempt loan processor.

45.     DAS expected and directed Plaintiff Hill and Plaintiff Turner, as well as its other hourly, non-exempt employees, not to report overtime hours and, as a direct result, DAS did not accurately record and pay these employees for all overtime hours worked.

46.     During many weeks in the three-year period preceding this action, DAS expected and directed Plaintiff Hill and Plaintiff Turner, as well as its other hourly, non-exempt employees, not to report more than 32 hours during the workweek.

47.     During many weeks in the three-year period preceding this action, DAS expected and directed Plaintiff Hill and Plaintiff Turner, as well as its other hourly, non-exempt employees, not to report more than 32 hours during the workweek, regardless of the actual number of hours worked and, as a direct result, DAS failed to pay Plaintiff Hill and Plaintiff Turner, as well as its hourly, non-exempt employees, for all hours worked, including both straight-time and overtime hours worked.

48.     Although Plaintiff Hill and Plaintiff Turner are no longer employed at DAS, upon information and belief, DAS continues to carry out its same unlawful pay and time-keeping practices described in this Complaint, which deprived Plaintiffs Hill and Turner, and continues to deprive other similarly situated hourly, non-exempt employees of overtime premiums for all hours worked over 40 in a workweek.

49.     Despite DAS's ability to accurately track, record, and pay its employees for all hours worked, including overtime, DAS subjected Plaintiffs Hill and Turner, and similarly situated hourly, non-exempt employees, to a company-wide, unlawful practice of failing to accurately record and pay for all hours worked, including both straight-time and overtime hours.

50.     DAS did not pay Plaintiff Hill and Plaintiff Turner and other hourly, non-exempt employees for all their work hours including overtime compensation despite the fact that they routinely worked over eight hours per day and more than 40 hours per week.

51.     DAS suffered and permitted Plaintiff Hill and Plaintiff Turner and other hourly, non-exempt employees to work more than forty hours per week without overtime compensation for all hours worked.

52.     DAS systematically applies this unlawful pay practice to all hourly, non-exempt employees.

53.     For example, Plaintiff Hill and Plaintiff Turner and other hourly, non-exempt employees regularly work(ed) at least five days a week. They usually begin work in the morning. And Plaintiff Hill and Plaintiff Turner and other hourly, non-exempt employees regularly perform work during meal breaks and/or after the end of normal office hours, including during evenings and on weekends, causing their hours worked to exceed forty in a week.

54.     For example, Plaintiff Hill's schedule fluctuated from day-to-day.  However, her regular schedule had her working from her home office Mondays through Fridays, generally logging in as "available" beginning around 8:30 a.m. and continuing until at least 6:30 p.m. Additionally, Plaintiff Hill began checking and responding to work calls, texts and emails each morning at approximately 7:00 a.m. and continuing until she "made herself available" around 8:30 a.m., and she continued taking calls and responding to texts and emails into the evening, after the end of her regular business hours. Plaintiff Hill also worked late into the evening as needed to support DAS loan employees in all time zones spanning from Hawaii to the east coast. As such, Plaintiff Hill's regular schedule had her working an average of 60-65 hours per week.

55.     Similarly, Plaintiff Turner's schedule fluctuated from day-to-day.  However, her regular schedule had her working in the office Mondays through Fridays, generally from 9:30 or 10:00 a.m. until at least 6:00 p.m.  However, because she was expected to stay as late as needed to ensure loans closed on time, she regularly stayed at the office well past 6:00 p.m. and often late into the evening.  Additionally, Plaintiff Turner began checking and responding to work calls, texts and emails each morning at approximately 7:30 a.m. before she arrived at the office, and she continued responding to calls, texts and emails after leaving the office. As such, Plaintiff Turner's regular schedule had her working an average of 55-60 hours per week during the relevant period.

56.     DAS expects and directs its hourly, non-exempt employees not to report overtime

hours and, as a direct result, DAS does not accurately record and pay its hourly, non-exempt employees overtime premiums for all overtime hours worked.

57.     Despite DAS's ability to accurately track, record, and pay its employees for all hours worked, including overtime, DAS subjected Plaintiff Hill and Plaintiff Turner, and similarly situated hourly, non-exempt employees, to a company-wide, unlawful practice of failing to accurately record and pay for all hours worked, including both straight-time and overtime hours.

<u>WILLFUL, NOT IN GOOD FAITH</u>

58.     DAS's policy and practice of failing to pay its MLOs all federally mandated overtime wages lacks good faith and willfully violates the FLSA because DAS is aware these employees often work more than forty (40) hours in a work week but instructs them not to record or report overtime work.

59.     DAS's policy and practice of failing to pay its hourly, non-exempt employees federally mandated overtime wages lacks good faith and willfully violates the FLSA because DAS is aware these employees often work more than forty (40) hours in a work week but instructs them not to record or report overtime work.

60.     DAS's failure to pay MLOs and hourly, non-exempt employees for all hours worked, including overtime hours, is a willful violation because, among other things, DAS knows or reasonably should know (i) its employees work off-the-clock because it expects and enables its employees to service customers outside of normal office hours, including during evenings and weekends, (ii) mortgage loan originators work outside of office hours responding to customer inquiries and communicating with DAS management employees; (iii) many of its hourly, non-exempt employees service customers in multiple time zones, which requires performing work before and after their local office hours; (iv) DAS's own software, e-mail servers, and computer

systems, including ActivTrak, reflect employees working for DAS during hours not recorded as worked in DAS's pay and time-keeping systems; and (v) DAS's own management employees direct and monitor employees' adherence to DAS's unlawful pay and time-keeping practice.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

61.     Plaintiff Nash brings his FLSA claim as an opt-in action pursuant to 29 U.S.C. § 216(b) on behalf of all mortgage loan originators, and individuals holding comparable positions with different titles, employed by DAS within the United States during the three-year period preceding this action and continuing through the date of final judgment (the "MLO Collective Action").

62.     Plaintiff Nash, on behalf of himself and the MLO Collective members, seeks relief on a collective basis challenging DAS's unlawful practice of failing to accurately record and pay overtime premiums for all overtime hours worked.

63.     The identity of putative MLO Collective members may be determined from DAS's records and potential MLO Collective members may easily and quickly be notified of the pendency of this action.

64.     Plaintiff Nash will fairly and adequately protect the interests of the MLO Collective members and has retained counsel that is experienced and competent in the fields of wage and hour law and collective and class action litigation.  Plaintiff Nash has no interest that is contrary to or in conflict with the members of the putative collective.

65.     Plaintiff Hill and Plaintiff Turner bring their FLSA claims as an opt-in action pursuant to 29 U.S.C. § 216(b) on behalf of all hourly, non-exempt employees, regardless of title, employed by DAS within the United States during the three-year period preceding this action and continuing through the date of final judgment (the "Off-the-Clock Collective Action").

66.     Plaintiff Hill and Plaintiff Turner, on behalf of themselves and the Off-the-Clock Collective members, seek relief on a collective basis challenging DAS's unlawful practice of failing to accurately record and pay overtime premiums for all overtime hours worked.

67.     The identity of putative Off-the-Clock Collective members may be determined from DAS's records and potential Off-the-Clock Collective members may easily and quickly be notified of the pendency of this action.

68.     Plaintiff Hill and Plaintiff Turner will fairly and adequately protect the interests of the Off-the-Clock Collective members and have retained counsel that is experienced and competent in the fields of wage and hour law and collective and class action litigation. Plaintiff Hill and Plaintiff Turner have no interest that is contrary to or in conflict with the members of the putative collective.

<u>CLASS ACTION ALLEGATIONS</u>

69.     Plaintiff Turner brings her Missouri MMWL claim (Count III) as a Rule 23 class action on behalf of herself and a class of all hourly, non-exempt employees of Defendant, regardless of title, who work or worked for Defendant in the State of Missouri during the three-year period preceding this action and continuing through the date of final judgment (the "Missouri MMWL Class").

70.     Plaintiff Turner brings her Missouri common law claims (Counts IV and V) as Rule 23 class action claims on behalf of herself and a class of all hourly, non-exempt employees of Defendant, regardless of title, who work or worked for Defendant in the State of Missouri during the five-year period preceding this action and continuing through the date of final judgment (the

"Missouri Common Law Class").[1]

71.     Plaintiff Turner, on behalf of herself and the Missouri Rule 23 Classes, seeks relief on a class basis challenging DAS's unlawful practice of failing to accurately record and pay for all hours worked in violation of the Missouri Minimum Wage Maximum Hours Law and common law.

72.     The identity of the members of the Missouri Rule 23 Classes may be determined from DAS's records and putative class members may easily and quickly be notified of the pendency of this action.

73.     Plaintiff's Rule 23 class claims (Counts III, IV, and V) on behalf of the Missouri Rule 23 Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

74.     Plaintiff Turner's Missouri Rule 23 Classes meet Rule 23's numerosity requirement because, although the precise number is unknown and the facts for calculating that number are within Defendant's sole control, DAS employed more than forty (40) hourly, non-exempt employees in the State of Missouri during the applicable statute of limitations period for each Rule 23 claim.  Upon information and belief, the size of the Missouri Rule 23 Classes is sufficiently numerous that joinder of all members is impracticable.

75.     Questions of law and fact common to members of the Missouri Rule 23 Classes predominate over questions that may affect only individual members because DAS has acted on grounds generally applicable to all members. Among the questions of law and fact common to Plaintiff and other Class Members are:

---

[1] The Missouri MMWL Class and the Missouri Common Law Class share the same class definition but with differing statute of limitations periods.  These two classes are collectively referred to as "the Missouri Rule 23 Classes."

13

a. Whether DAS employed the Class Members within the meaning of the MMWL;

b. Whether DAS systematically failed to accurately track and record all hours worked by Class Members during the class period;

c. Whether DAS implemented a policy and/or practice limiting or precluding Class Members' ability to report all straight-time hours worked;

d. Whether DAS implemented a policy and/or practice limiting or precluding Class Members' ability to report all overtime hours worked;

e. Whether DAS promised to pay Class Members an agreed hourly rate in exchange for work performed;

f. Whether DAS's systemic failure to accurately track, record, and pay Class Members for all overtime hours worked violated the MMWL;

g. Whether DAS's systemic failure to accurately track, record, and pay Class Members for all hours worked constituted a breach of contract;

h. Whether DAS was unjustly enriched when it received the benefit of Class Members' off-the-clock work without paying for it.

76. Plaintiff Turner's claims are typical of those of the Missouri Rule 23 Class Members in that class members, like Plaintiff, were employed as hourly, non-exempt employees who were subject to Defendant's same or similar pay and time-keeping policies and practices.

77. Plaintiff Turner will fairly and adequately protect the interests of the Missouri Rule 23 Class members and has retained counsel that is experienced and competent in the fields of wage and hour law and collective and class action litigation. Plaintiff Turner has no interest that is contrary to or in conflict with the members of the putative class.

78. A class action appropriate, pursuant to Rule 23(b)(3), because common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class Members may be relatively small, and the expense and burden of individual litigation make it virtually impossible for the members of the class action to individually seek redress for the wrongs done to them.

79. Plaintiff Turner knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

80. Plaintiffs anticipate amending this Original Complaint as other Collective Action members opt into this lawsuit should it become necessary and appropriate to assert any additional allegations or claims for relief.

## COUNT I

### FLSA Collective Action, Pursuant to 29 U.S.C. § 216(b)
### On Behalf of Plaintiff Nash and the MLO Collective

81. Plaintiff Nash, on behalf of himself and all MLO Collective members, reasserts the allegations set forth in the above paragraphs.

82. Plaintiff Nash brings Count I, his FLSA overtime claim, as an opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all others similarly situated.

83. Plaintiff Nash consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b). A copy of Plaintiff Nash's written consent is attached.

84. The FLSA regulates the payment of overtime by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

85.     At all relevant times, DAS has been, and continues to be, subject to the overtime provisions of the FLSA because its employees are engaged in commerce.

86.     At all relevant times, Plaintiff Nash and all MLO Collective members have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

87.     At all relevant times, Plaintiff Nash and all MLO Collective members were employees of DAS under 29 U.S.C. § 203(e).

88.     Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations.  Neither Plaintiff Nash nor any MLO Collective member performed job duties or tasks that exempt them from overtime compensation as required by the FLSA.  None of the FLSA exemptions apply to Plaintiff Nash or any MLO Collective members.

89.     The FLSA requires that employers, such as DAS, compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek.

90.     DAS failed to compensate Plaintiff Nash and all MLO Collective Members at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek and, therefore, is in violation of the FLSA, 29 U.S.C. § 207(a)(1).

91.     DAS acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

92.     As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by DAS from Plaintiff Nash and all MLO Collective members.  Accordingly, DAS is liable pursuant to 29 U.S.C. § 216(b) for overtime compensation, together with an additional amount as liquidated damages including the

16

employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nash, on behalf of himself and all similarly situated MLO Collective members, respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the MLO Collective members and prompt issuance of notice of an FLSA opt-in class pursuant to 29 U.S.C. § 216(b) to all similarly situated members apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue;

b. An Order appointing Plaintiff Roderick Nash as collective representative and Rowdy Meeks Legal Group LLC and Davis George LLC as collective counsel on behalf of all MLO Collective members;

c. A declaration that DAS is financially responsible for notifying all MLO Collective members of its alleged FLSA violations;

d. An award of damages in the amount of Plaintiff Nash's and MLO Collective members' unpaid overtime wages plus an additional amount as liquidated damages;

e. Costs and expenses of this action including reasonable attorneys' fees and expert fees;

f. Pre-judgment and post-judgment interest; and

g. Any further relief as this Court deems just and proper.

## COUNT II

**FLSA Collective Action, Pursuant to 29 U.S.C. § 216(b)**
**On Behalf of Plaintiffs Hill and Turner and the Off-the-Clock**
**Collective**

93.     Plaintiffs Hill and Turner, on behalf of themselves and all Off-the-Clock Collective members, reassert the allegations set forth in the above paragraphs.

94.     Plaintiffs Hill and Turner bring Count I, their FLSA overtime claims, as an opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all others similarly situated.

95.     Plaintiffs Hill and Turner consent in writing to be parties to this action pursuant to 29 U.S.C. § 216(b). Copies of their written consents are attached.

96.     The FLSA regulates the payment of overtime by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

97.     At all relevant times, DAS has been, and continues to be, subject to the overtime provisions of the FLSA because its employees are engaged in commerce.

98.     At all relevant times, Plaintiffs Hill and Turner and all Off-the-Clock Collective members have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

99.     At all relevant times, Plaintiffs Hill and Turner and all Off-the-Clock Collective members were employees of DAS under 29 U.S.C. § 203(e).

100.     Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of

employees from overtime pay obligations. Neither Plaintiffs Hill and Turner nor any Off-the-Clock Collective member performed job duties or tasks that exempt them from overtime compensation as required by the FLSA. None of the FLSA exemptions apply to Plaintiffs Hill and Turner or any Off-the-Clock Collective members.

101. The FLSA requires that employers, such as DAS, compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek.

102. DAS failed to compensate Plaintiffs Hill and Turner and all Off-the-Clock Collective Members at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek and, therefore, is in violation of the FLSA, 29 U.S.C. § 207(a)(1).

103. DAS acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

104. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by DAS from Plaintiffs Hill and Turner and all Off-the-Clock Collective members. Accordingly, DAS is liable pursuant to 29 U.S.C. § 216(b) for overtime compensation, together with an additional amount as liquidated damages including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Hill and Turner, on behalf of themselves and all similarly situated Off-the-Clock Collective members, respectfully request that this Court grant the following

relief:

    a.  Designation of this action as a collective action on behalf of the Off-the-Clock Collective members and prompt issuance of notice of an FLSA opt-in class pursuant to 29 U.S.C. § 216(b) to all similarly situated members apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue;

    b.  An Order appointing Plaintiffs Teresa Hill and Stephanie Turner as collective representatives and Rowdy Meeks Legal Group LLC and Davis George LLC as collective counsel on behalf of all Off-the-Clock Collective members;

    c.  A declaration that DAS is financially responsible for notifying all Off-the-Clock Collective members of its alleged FLSA violations;

    d.  An award of damages in the amount of Plaintiff Hill's, Plaintiff Turner's, and MLO Collective members' unpaid overtime wages plus an additional amount as liquidated damages;

    e.  Costs and expenses of this action including reasonable attorneys' fees and expert fees;

    f.  Pre-judgment and post-judgment interest; and

    g.  Any further relief as this Court deems just and proper.

### COUNT III
**Violation of RSMo. § 290.500 et seq. ("MMWL")**
**Missouri Unpaid Overtime Class Action, Pursuant to Fed. R. Civ. P. 23**
**On Behalf of Plaintiff Turner and the Missouri MMWL Class**

105.    Plaintiff Turner, on behalf of herself individually and all Missouri MMWL Class members, reasserts the allegations set forth in the above paragraphs.

106.     Plaintiff Turner brings Count III, the Missouri Unpaid Overtime Class Action, on behalf of herself individually and all Missouri MMWL Class Members, pursuant to Fed. R. Civ. P. 23.

107.     At all material times, Plaintiff Turner and the Missouri MMWL Class Members have been employees entitled to the protections, rights, and remedies prescribed in the Missouri Minimum Wage Maximum Hour Law, RSMo. § 290.500 to 290.530 (the "MMWL").

108.     The MMWL requires that employers, such as DAS, compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek.

109.     DAS failed to compensate Plaintiff Turner and all Missouri MMWL Class members at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek and, therefore, is in violation of the MMWL.

110.     DAS violated the MMWL in relevant part, by failing to accurately track, record, and pay for all hours worked by Plaintiff and the Missouri MMWL Class and, therefore, failing to pay them all statutorily required overtime wages.

111.     Plaintiff Turner and Missouri MMWL Class members have thereby been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Turner, on behalf of herself and all Missouri MMWL Class members, respectfully request that this Court grant the following relief:

a. Designation of Count III as a class action, pursuant to Rule 23, on behalf of the Missouri MMWL Class members;

b. An Order appointing Plaintiff Turner as class representative and Rowdy Meeks

Legal Group LLC and Davis George LLC as class counsel on behalf of all Missouri MMWL Class members;

c.  An award of damages in the amount of Plaintiff Turner's and Missouri MMWL Class members' unpaid overtime wages plus an additional amount equal to twice the unpaid wages as liquidated damages;

d.  Costs and expenses of this action including reasonable attorneys' fees and expert fees;

e.  Pre-judgment and post-judgment interest; and

f.  Any further relief as this Court deems just and proper.

## COUNT IV
**Missouri Breach of Contract Class Action, Pursuant to Fed. R. Civ. P. 23**
**On Behalf of Plaintiff Turner and the Missouri Common Law Class**

112.  Plaintiff Turner, on behalf of herself individually and all Missouri Common Law Class members, reasserts the allegations set forth in the above paragraphs.

113.  Plaintiff Turner brings Count IV, the Missouri Breach of Contract Class Action, on behalf of herself individually and all Missouri Common Law Class Members, pursuant to Fed. R. Civ. P. 23.

114.  Plaintiff Turner, on behalf of herself individually and all Missouri Common Law Class members, seeks relief on a class basis challenging DAS's breach of its promise to these employees that they will receive a set hourly rate in exchange for each hour worked for Defendant.

115.  DAS promised Plaintiff Turner and each of the Missouri Common Law Class member an hourly rate of pay in exchange for work performed.

116.  In breach of its promise, DAS systematically precluded and/or limited Plaintiff

Turner and each of the Missouri Common Law Class members' ability to record and receive pay for all their hours worked.

117. As a result of this breach, Plaintiff Turner and the Missouri Common Law Class members did not receive all the compensation DAS promised them, and Defendant is liable to them for damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Turner, on behalf of herself and all Missouri Common Law Class members, respectfully request that this Court grant the following relief:

   a. Designation of Count IV as a class action, pursuant to Rule 23, on behalf of the Missouri Common Law Class members;

   b. An Order appointing Plaintiff Turner as class representative and Rowdy Meeks Legal Group LLC and Davis George LLC as class counsel on behalf of all Missouri Common Law Class members;

   c. An award of damages in the amount of Plaintiff Turner's and Missouri Common Law Class members' unpaid hourly wages;

   d. Costs and expenses of this action including reasonable attorneys' fees and expert fees;

   e. Pre-judgment and post-judgment interest; and

   f. Any further relief as this Court deems just and proper.

**COUNT V**
**Missouri Quantum Meruit ("Unjust Enrichment") Class Action, Pursuant to Fed. R. Civ. P. 23**
**On Behalf of Plaintiff Turner and the Missouri Common Law Class**

118. Plaintiff Turner, on behalf of herself individually and all Missouri Common Law

Class members, reasserts the allegations set forth in the above paragraphs.

119.     Plaintiff Turner brings Count V, the Missouri Unjust Enrichment Class Action, on behalf of herself individually and all Missouri Common Law Class Members, pursuant to Fed. R. Civ. P. 23.

120.     Plaintiff Turner, on behalf of herself individually and all Missouri Common Law Class members, seeks relief on a class basis challenging DAS's practice of failing to fully and properly compensate its Missouri hourly, non-exempt employees.

121.     Plaintiff Turner and the Missouri Common Law Class members conferred a benefit on DAS by working on its behalf without sufficient, legally owed compensation.

122.     DAS had an appreciation or knowledge of the benefit conferred by Plaintiff Turner and the Missouri Common Law Class members.

123.     DAS accepted and retained the benefits conferred by Plaintiff Turner and the Missouri Common Law Class members under such circumstances making it inequitable for DAS to retain the benefit without payment for its value.

124.     Plaintiff Turner and the Missouri Common Law Class members have been damaged in an amount to be determined at trial.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff Turner, on behalf of herself and all Missouri Common Law Class members, respectfully request that this Court grant the following relief:

g.  Designation of Count V as a class action, pursuant to Rule 23, on behalf of the Missouri Common Law Class members;

h.  An Order appointing Plaintiff Turner as class representative and Rowdy Meeks Legal Group LLC and Davis George LLC as class counsel on behalf of all

Missouri Common Law Class members;

i.   An award of compensatory damages and/or disgorged profits and interest earned by DAS on unpaid hourly wages;

j.   Costs and expenses of this action including reasonable attorneys' fees and expert fees;

k.   Pre-judgment and post-judgment interest; and

l.   Any further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a jury trial on all claims with respect to which they have the right to a jury.

Dated: March 27, 2024

Respectfully submitted,

**DAVIS GEORGE LLC**

*s/ Tracey F. George*
Tracey F. George, MOED Bar No. 52361(MO)
1600 Genessee St., Suite 328
Kansas City, MO 64102
Tel. 816-569-2629 ext. 2
Fax.  816-447-3939
tracey@dgmlawyers.com
www.dgmlawyers.com

Rowdy B. Meeks, Bar No. 48349MO
*Pro Hac Vice Motion Forthcoming*
**ROWDY MEEKS LEGAL GROUP LLC**
8201 Mission Rd., Suite 250
Prairie Village, KS 66208
Tel.   913 766-5585
Fax    816 875-5069

rowdy.meeks@rmlegalgroup.com
www.rmlegalgroup.com


**ATTORNEYS FOR PLAINTIFFS**