UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RODERICK NASH et al., on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>DAS ACQUISITION COMPANY, LLC,<br><br>    Defendant. | Case No. 4:24-cv-00473-SRC |

**Memorandum and Order**

Federal Rule of Civil Procedure 15(a)(2) sets forth a lax standard to amend pleadings. Here, Plaintiffs seek to modify their complaint to narrow their proposed collective definition for loan-processing employees in Count II, add a putative class claim under the Missouri Merchandising Practices Act, and clarify some allegations. Because the parties do not oppose certain proposed amendments and because the Court agrees that Plaintiffs plausibly state a claim under the MMPA, the Court must freely give leave and, therefore, grants Plaintiffs' motion.

**I. Background**

A little over a year ago, the named plaintiffs—one former mortgage-loan originator (MLO) and two former loan processors, doc. 1 at ¶¶ 29, 43–44—filed this suit against DAS Acquisition Company, asserting putative collective claims under the Fair Labor Standards Act (Counts I and II) and putative class claims under Missouri statutory law (Count III) and common law (Counts IV and V), *id.* at ¶¶ 81–124. DAS filed its answer, doc. 8, and, after the first Rule 16 conference, doc. 20, the Court authorized the parties to begin discovery limited to the issue of conditional class certification, doc. 21.

Subsequently, the parties stipulated to, among other things, two FLSA collectives—the "MLO Collective" and the "Off-the-Clock Collective." Doc. 23 at 1–2.[1]  The Court conditionally certified the proposed collectives and referred the case to mediation. Doc. 24 at ¶¶ 1, 3. Following an unsuccessful mediation, doc. 29, the parties sought—and the Court approved—their FLSA notice-and-distribution plan. Docs. 28, 30. After the parties completed that process, *see* doc. 52 at ¶ 1; *see also* docs. 31–41, 43–51, the Court held a second Rule 16 Conference, doc. 58, and entered a case-management order, doc. 62.

Under that case-management order and relevant here, "[n]o later than March 10, 2025, the parties must file any motions for joinder of additional parties or amendment of pleadings." Doc. 62 at I.B. And so, on that very date, Plaintiffs filed their now fully briefed motion for leave to amend their complaint. Docs. 65–68.

## II.     Standard

Rule 15 controls amendments to pleadings. Subsection (a)(1) governs amendments "as a matter of course"—i.e., those typically made shortly after a party files a pleading. Subsection (a)(2), on the other hand, dictates amendments "[i]n all other cases." Under the latter provision, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). And a court "should freely give leave when justice so requires." *Id.*

Under the liberal bend of Rule 15's amendment policy, "[d]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955

---

[1] The Court cites to page numbers as assigned by CM/ECF.

(8th Cir. 2018) (quoting *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)); *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) ("A court abuses its discretion when it denies a motion to amend a complaint unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.").

"An amendment is futile if the amended claim 'could not withstand a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6).'" *Hillesheim*, 897 F.3d at 955 (quoting *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). "To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff is entitled to relief, by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up). And as a general matter, "[r]esolution of claims on their merits," the Eighth Circuit has explained, "is favored under . . . Rule . . . 15(a)(2)." *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 962–63 (8th Cir. 2015).

**III.    Discussion**

In their motion, Plaintiffs request multiple amendments to their complaint that, for purposes of this memorandum and order, fit into two buckets. In the first bucket, which DAS refers to (and therefore the Court refers to) as "housekeeping amendments," doc. 67 at 1, Plaintiffs seek leave to narrow, in Count II, their proposed collective definition to loan-processing employees and clean up "some verbiage in the allegations for clarity," doc. 66 at 2. In the second bucket, Plaintiffs look to add a putative class claim, by way of an additional named plaintiff, under the MMPA. Doc. 66 at 2. The Court evaluates each in turn.

**A.    Housekeeping amendments**

In its opposition brief, DAS explains that, while it opposes Plaintiffs' "attempt to

shoehorn a mortgage industry commission dispute into the framework of the MMPA," it "does not oppose Plaintiffs' other proposed housekeeping amendments." Doc. 67 at 1. Thus, the Court acknowledges the parties' tacit agreement on Plaintiffs' proposed housekeeping amendments and, on that basis, grants Plaintiffs motion as to those amendments.

### B.     MMPA claim

The parties hotly contest the addition of Plaintiffs' class claim under the MMPA.

For their part, Plaintiffs explain that their counsel recently "learned that MLO's [sic] did not receive all their commissions from DAS, including commissions on loan files opened or in process prior to their termination but closed or funded after their termination." Doc. 66 at 3. And so based on the reasoning in a recent decision from the Missouri Court of Appeals, *Abduhamed v. Carol House Furniture*, No. ED 112408, 2025 WL 451652, at *3–4 (Mo. Ct. App. Feb. 11, 2025), Plaintiffs contend that DAS's "practice violates [Mo. Rev. Stat.] § 407.912" and, therefore, "any commission contract provision which seeks to eliminate this obligation to pay commissions on services delivered after termination is void." Doc. 66 at 3–4. Plaintiffs also argue that "there has been no undue delay," "there is no bad faith," "the purpose" of the amendment "is not to cure deficiencies in any prior amendments," and "there is no prejudice to" DAS. *Id.* at 4.

In response, DAS proffers two principal arguments to arrive at its conclusion that "such an amendment would be futile." Doc. 67 at 2. First, DAS reasons that, because the "MMPA's commission provisions were never meant to apply to complex, multi-step processes like mortgage loan origination, where commissions are not earned until all contingencies are satisfied and the loan is funded," the Court "should reject Plaintiffs' attempt to distort the statute's purpose and extend the MMPA beyond its intended scope." *Id.* at 4. "The MMPA's

4

commission provisions," however, "apply only to commissions on products or services ordered prior to termination but delivered and accepted after termination," as DAS sees it, and "extending" the MMPA "to mortgage loan commission disputes would be an unprecedented expansion of the" statute. *Id.* at 2–3.

Second, DAS posits that the MMPA's provision expressing that "the written terms of the contract between the principal and sales representative shall control," *id.* at 6 (quoting Mo. Rev. Stat. § 407.912.1(1)), coupled with the proposed named plaintiff's employment agreement, eliminates Plaintiffs' ability to state a plausible claim, *id.* at 6–7. Because the agreement "plainly states that commissions are earned only on loans that have disbursed before termination of employment," DAS posits that Plaintiffs cannot bring an MMPA claim and, on that basis, the Court should deem futile their proposed amendment. *Id.* at 7.

1. **Scope of the MMPA**

DAS's first argument, which in effect asks the Court to carve out mortgage-loan origination from the MMPA's purview, holds no water. The language of the commissions provisions themselves do not carve out, much less mention, that industry (or any specific industry for that matter). *See* Mo. Rev. Stat. §§ 407.911–.915. Nor does DAS cite any caselaw holding so. *See* doc. 67. And while DAS reiterates how the statute "was designed," *id.* at 2, the Court looks to the statute's plain text, as it must, *e.g.*, *State ex rel. Bailey v. Fulton*, 659 S.W.3d 909, 912 (Mo. 2023) ("The primary goal of statutory interpretation is to give effect to legislative intent, which is most clearly evidenced by the plain text of the statute." (citation omitted)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 2, at 56 (2012) ("The words of a governing text are of paramount concern.").

5

The MMPA's commissions provisions create a cause of action for "sales representative[s]" against "[a]ny principal who fails to timely pay the sales representative commissions" that he or she "earned." Mo. Rev. Stat. § 407.913. Further, the statute declares a wide berth by broadly defining "Commission," "Principal," and "Sales Representative." Mo. Rev. Stat. § 407.911. It also expresses, among other things, "[w]hen a commission becomes due" and how the statute "shall be construed." Mo. Rev. Stat. § 407.912. But fatal to DAS's first argument, the statute says nothing about "its intended scope," doc. 67 at 4, or limits that scope to "traditional sales transaction[s]," and not "multi-step processes like mortgage loan origination," *id.* at 2, 4. Therefore, the Court declines DAS's invitation to circumscribe the MMPA's commissions provisions in a way wholly unsupported by the law itself.

### 2. Stating a claim and futility

To state a plausible-on-its-face claim under the MMPA's commissions provisions, a plaintiff must allege that a "principal" failed "to timely pay the sales representative commissions" that he or she "earned." Mo. Rev. Stat. § 407.913. The commissions in question must represent "compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of orders or sales, or as a specified amount per order or per sale." Mo. Rev. Stat. § 407.911(1).

Further, the principal must "provide[] . . . a product or service for sale," "[c]ontract[] with a sales representative to solicit orders for the product or service," and "[c]ompensate[] the sales representative, in whole or in part, by commission." Mo. Rev. Stat. § 407.911(2). And the sales representative must "contract[] with a principal to solicit orders and [be] compensated, in whole or in part, by commission." Mo. Rev. Stat. § 407.911(3). Also, to determine when "a

6

commission becomes due," "[t]he written terms of the contract between the principal and sales representative shall control." Mo. Rev. Stat. § 407.912.1.

But DAS does not argue that Plaintiffs have failed to articulate these elements in their proposed amended complaint. *See* doc. 67; *see also* doc. 65-1. Instead, and to be crystal clear, DAS's argument goes like this. The MMPA requires that, when determining when "a commission comes due," the "written terms of the contract" between the parties "shall control." Mo. Rev. Stat. § 407.912.1. When looking at the proposed named plaintiff's employment agreement, it states that DAS "shall not pay, and Employee shall not receive, any compensation related directly or indirectly to Mortgage Loans that have not been disbursed as of the effective date of the termination of Employee's employment with" DAS. Doc. 67-1 at 4.

And so, because the employment agreement expressly states that DAS will pay no commissions as part of mortgage loans disbursed *after* the termination of the MLO involved with the loan, any MLO subject to the agreement cannot bring a commissions claim under the MMPA for commissions tied to loans disbursed after the respective MLO's terminate date. *See* doc. 67 at 6–7. In a nutshell, DAS asserts that the language in the employment agreement—by way of section 407.912.1—cuts off these potential claims under the MMPA. *Id.* at 7. DAS's theory, in isolation, appears tenable. But a neighboring MMPA provision and a recent Missouri Court of Appeals decision counsel this Court in favor of finding that Plaintiffs, under threshold motion-to-dismiss scrutiny, have stated a claim under Rule 12(b)(6).

Section 407.912.2 prescribes that "[n]othing in sections 407.911 to 407.915"—i.e., the entire sales-commissions section of the MMPA—"shall be construed to impair a sales representative from collecting commissions on products or services ordered prior to the termination of the contract between the principal and the sales representative but delivered and

7

accepted by the purchaser after such termination." In *Abduhamed*, the Missouri Court of Appeals reconciled how, and to what extent, courts should read section 407.912.2 in conjunction with section 407.912.1(1)'s directive that the written terms of an applicable contract control. 2025 WL 451652, at *4. In that case, the court explained that, "[u]nder the express terms of the" employment agreement in question, the former employer had "no obligation to pay a sales representative's commissions on business delivered after their termination." *Id.*

But, instead of "solely focus[ing] on [the] single sentence of [section] 407.912.1(1), rather than the statutory provisions as a whole," the court held that the "provision in the" employment agreement "blatantly conflict[ed] with the language of the statute, and clearly purport[ed] to waive the protections afforded to a sales representative by" section "407.912.2: ensuring a sales representative, like" the plaintiff, could "collect commissions on products delivered and accepted *after* their termination." *Id.* Thus, pursuant "to [section] 407.915.2," the appellate court affirmed the lower court's conclusion that "the provision of the" employment agreement, "providing sales representatives are only entitled to commissions for delivered business through his last day worked," was "*void*." *Id.*

Careful to not put its finger on the scale, the Court notes that *Abduhamed* works to support, at this juncture, the facial plausibility of Plaintiffs' proposed MMPA claim. To be sure, DAS relies on *Skillington v. Activant Solutions, Inc.*, No. 4:09-cv-00673-MLM, 2009 WL 1588280, at *2–5 (E.D. Mo. June 5, 2009), to oppose the *Abduhamed* court's reading of the MMPA. Doc. 67 at 6–7. But in *Skillington*, the court dismissed the plaintiff's MMPA claim because the plaintiff did "not allege that the condition precedent for him to be paid commissions," i.e., that the defendant "received payment within 100 days of [the p]laintiff's termination," "was met." 2009 WL 1588280, at *5. The court paid mere lip service to section

8

407.912.2, mentioning the provision only once, and failed to reconcile its language with section 407.912.1(1). *Id.* Thus, a gulf exists between the plaintiff's pleading deficiency in *Skillington* and how the court in *Abduhamed* harmonized sections 407.912.2 and 407.912.1(1).

Therefore, because DAS has not sufficiently demonstrated that Plaintiffs' proposed MMPA claim "could not withstand a motion to dismiss under Rule 12(b)(6)," *Hillesheim*, 897 F.3d at 955 (quoting *Silva*, 762 F.3d at 719), the Court concludes not futile Plaintiffs' proposed amendment and, on that basis, that justice so requires leave to amend, Fed. R. Civ. P. 15(a)(2).

### IV.  Conclusion

Accordingly, the Court grants [65] Plaintiffs' Motion for Leave to File First Amended Complaint. As a result, the Court orders Plaintiffs to, no later than May 23, 2025, file a clean version of their amended complaint for docketing. The Court also orders that DAS, in accordance with Federal Rule of Civil Procedure 15(a)(3), file "any required response to [the] amended pleading . . . within 14 days after service of the amended pleading." All deadlines in the Court's case-management order, doc. 62, remain in effect.

So ordered this 21st day of May 2025.

_SL R. CQ_
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE